## SCHAFSTALL v EASTBOURNE GARAGE, INC.

Ohio Appeals, 1st Dist, Hamilton Co.

No. 5789. Decided June 10, 1940.

Grischy & Grischy, Cincinnati, for appellee.

Donald Calhoun, Cincinnati, for appellant.

## OPINION

By HAMILTON, PJ.

This law suit originated in a replevin action brought by plaintiff-appellee in the Municipal Court of Cincinnati, to replevin a Hudson, model 84, automobile, which defendant had placed in the garage of the defendant, and on which the defendant, C. I. T. Corporation claimed a mortgage interest.

The plaintiff Schafstall purchased the automobile from one Levy, doing business as Belveder Motor Sales Company, a retailer, dealing in Hudson and Terraplane automobiles. At that time the certificate of title law was not in effect. The law applicable was covered by the old bill of sale law.

On the trial of the case, the Municipal Court found the right of possession in favor of plaintiff and so rendered its judgment. which judgment was affirmed, on appeal to the Common Pleas Court. From that judgment, appeal is prosecuted to this court on questions of law.

The plaintiff, to prove ownership in the automobile in question produced evidence tending to show the following facts: Sometime in November, 1937, Schafstall entered into negotiations with Levy for the purchase of a 1938, model 84 Hudson. At the time Schafstall owned a 1937 Hudson automobile. They made the deal, in which Schafstall was allowed a trade-in value on his 1937 Hudson, and the difference of $410 was to be paid by Schafstall. At the time Levy did not have the automobile, but later secured the same, and on December 2nd the deal was closed at the place of business of Levy. Schafstall did not have the $410 in cash, and asked Levy if he, Levy, would accept his check for the $410 to close the deal. Levy agreed to this, took over the 1937 model Hudson with the bill of sale therefor, and delivered to Schafstall a 1938 Model 84 Hudson, together with a bill of sale therefor.

Schafstall was a traveling salesman, who was out of town a great deal of the time. Levy told him to leave the bill of sale with him and he would attend to having it recorded. This he did. Schafstall drove the new 1938 Hudson, model 84, away from Levy's place of business. After using the car, he discovered the clutch was not right and drove back to Levy's place of business, Levy having a mechanical department. Schafstall told Levy about the trouble he was having with the clutch. Levy's mechanic did some work on the clutch, and the car was then returned to Schafstall. Schafstall undertook to use the car, and shortly thereafter the clutch burned out entirely, and left him with the car on the streets of the city. Schafstall notified Levy and a mechanic went out and pulled the car in and Levy told Schafstall he would have to send to the factory and get a new clutch, and to leave the car and use his old 1937 Hudson, pending the securing of the new clutch and the installation of the same. In the meantime, Schafstall, to protect himself, stopped payment on the check.

Schafstall drove away in his old 1937 car pending the arrival of the new clutch, and while using it it was replevined by a finance company, other than the defendant, from a parking lot, where Schafstall had parked the car, claiming under a mortgage given to it by Levy while in Levy's possession.

In this action, the court held that Levy had title to the 1937 model Hudson, which was not contested by Schafstall, and it took over the 1937 model Hudson.

On December 22nd, the defendant, C. I. T. corporation went to Levy's place of business and in some manner secured possession of the 1938 model 84 Hudson and placed it in the Eastbourne Garage.

In January, Schafstall on his return to the city from business travels, called Levy's garage to find out about his 1938 model 84 Hudson. He was unable to get in touch with Levy, and a few days later he again called up and could not get in communication with Levy, and upon investigation and tracing found the automobile in the defendant's place of business, the Eastbourne Garage. He

thereupon instituted this replevin action to secure possession of the car.

The evidence further tends to show that during the time that Schafstall left the car with Levy in order to install the clutch, Levy went to the defendant, the C. I. T. Corporation, a finance company, and applied for a loan. Without any investigation and in response to his request, the corporation had Levy sign a mortgage in blank, and gave Levy its check for something over $800. The Finance Company then proceeded to fill out the mortgage in the absence of Levy.

The mortgage which is in the record as an exhibit shows a mortgage on a Terraplane Sedan. It is shown that a Terraplane Sedan is an entirely different car from a 1938 Model 84 Hudson.

The record does not show any mortgage held by the defendant corporation on a moel 84, 1938 Hudson. It is sought to show that they intended to take a mortgage on the 1938, model 84 Hudson.

The sales slip drawn up at the time the parties agreed on the sale contains the statement: "The title to the car to be delivered to me shall remain with you until the price is paid to you in full."

It is claimed that this provision, by reason of the stopping payment of the check, left the title in Levy, and he would have such ownership in the automobile as would give him the right to mortgage the property to the defendant. It must be borne in mind this sales slip was signed before the delivery of the car to Schafstall on December 2nd. Of course, if the deal was never consummated and the defendant corporation had a mortgage on this, its mortgage would be good. Levy is not making any denial of a completed sale to Schafstall. The provision in the bill of sale could, and the evidence tends to establish the fact that if it is of any force or effect that provision was waived by Levy. However, we are of opinion that the evidence tends to prove that the sale was consummated and the title passed.

This is not a case for the application of §8405 GC, which provides:

"When a person having sold goods continues in possession of the goods, or of negotiable documents of title to the goods, the delivery or transfer by that person, or by an agent acting for him, of the goods or documents of title under any sale, pledge or other disposition thereof, to any person receiving and paying value therefore in good faith and without notice of the previous sale, shall have the same effect as if the person making the delivery or transfer were expressly authorized by the owner of the goods to make it."

In the case under consideration, the person who sold the goods did not continue in possession of the goods, but delivered the car to the purchaser, and it only came back under the salesman's control by reason of the fact that the purchaser returned it for the purpose of having repairs and new parts put in the car. There is nothing in the statute applicable to this case as affecting the rights of the defendant corporation.

It is claimed by the defendant corporation that the reservation above quoted in the bill of sale and the stoppage of payment on the check defeats ownership in plaintiff. Ordinarily, the receipt of a check in payment of an account is merely conditional payment. However, there is a rule of law that a check may be received in absolute payment of the debt. In 21 R. C. L., 64, it is stated:

"The fact that a check or draft was received in absolute payment may be established by showing an express agreement to that effect, or by showing such circumstances as will satisfy the mind that such was the understanding of the parties at the time the check was taken."

Many cases are cited in support of this proposition in the notes.

It is also said in **31 O. Jur. 186:**

"The fact that a check or draft was received in absolute payment may be established by showing an express agreement to that effect, or by showing such circumstances as will satisfy the mind that such was the understanding of the parties at the time the check was taken."

Circumstances as to the understanding of the parties in this case are presented in the evidence. In answer to the direct question, Levy said he would take the check in payment. He thereupon delivered the car to Schafstall. Levy thereupon took possession of the trade-in car, accepting the bill of sale therefor. Levy thereupon mortgaged the trade-in car, exercising absolute ownership over it. After payment was stopped on the check, Levy placed the check in the hands of his attorney. It, therefore, became a question for the trial court as to whether or not it was the understanding of the parties at the time the check was taken, that it was received in absolute payment of the difference agreed upon, and upon the stoppage of payment, Levy's rights were relegated to the collection of the debt, which he recognized by turning the check over to his attorney. The rule that where one of two innocent persons must suffer the one that ▆▆▆▆ puts it in the power of the wrongdoer to work the fraud must bear the loss, can not be applied here, for the reason that were it invoked in this case it would be presenting the rule that where an owner took a car to a shop for repairs and the repair man mortgaged the car to an innocent party for value, he would lose his car merely because he took it to a garage and made it possible for the garageman to work a fraud. This would be a preposterous situation, but deducible if that principle were applied.

This brings up the question of whether or not the defendant corporation was an innocent party. This is not a floor plan sale. The corporation made its loan on a mortgage signed in blank

and not on the car in question, but, as described, on a Terraplane sedan. It made no investigation to ascertain whether the mortgagor had any such car. It took possession without right, or without any proceeding in law, or without any right to a 1938, model 84 Hudson, which is the car in question here.

Under these circumstances it became a question for the trier of the facts as to whether or not the check was taken by the seller under an express agreement, or under circumstances that would show it was the understanding between the parties that the check was taken in absolute payment in addition to the trade-in car. If it was, the provision in the sales slip, quoted above, was fully satisfied, or at least waived by the seller, who, it must be understood is making no claim or defense, or taking any action to invalidate the sale.

The trial court was justified in finding the right of possession in the plaintiff, and ▆▆▆▆▆▆▆ ▆ the Common Pleas Court was correct in affirming that judgment.

The judgment is affirmed.

ROSS, J., concurs.

MATTHEWS, J., dissents in separate memorandum.

MATATHEWS, J., dissenting.

The plaintiff owned a 1937 model Hudson automobile. He entered into a written agreement with an automobile dealer to exchange it and pay $410.93 in addition for a 1938 model Hudson automobile. He executed and delivered a bill of sale to the dealer for the 1937 Hudson. He asked the dealer whether he would take his check in payment of the $410.93, which he had agreed to pay. The dealer agreed and he thereupon executed and delivered to the dealer his personal check for that amount payable on demand. In accordance with the agreement, the dealer took the heater from the 1937 au-

tomobile and installed it in the 1938 automobile and charged $4 for making the transfer. The dealer executed bills of sale for the 1938 automobile. The purchaser signed these bills of sale in the proper place provided for the buyer's signature and left them with the dealer to file with the clerk of courts. It was also arranged that the dealer should secure a transfer of the license plates from the old to the new automobile. The dealer also gave the plaintiff a so-called owner's service policy at the same time. After all this had been done, the plaintiff left his 1937 Hudson with the dealer and drove away in this 1938 automobile.

A day or so later, some defect developed in the 1938 Hudson and the plaintiff returned it to the dealer for correction. The plaintiff took possession again after the correction was made, but some defect again developed and the 1938 Hudson was returned to the dealer a second time. There is a dispute as to whether it was returned for the purpose of rescinding the contract or merely for repairs. At any rate, the plaintiff obtained his 1937 Hudson, which he retained for more than a month, when it was taken from him under a writ of replevin in an action by The Cincinnati Finance Company, under a mortgage executed by the dealer while he had possession of it.

The plaintiff instituted a search for the 1938 Hudson and having located it in the possession of the defendant, Eastbourne Garage, Inc., brought this action in replevin to recover possession of it.

All of these transactions with the dealer occurred prior to the effective date of the certificate of title law relating to transfers of automobiles.

Now both plaintiff and defendant base their claims on title derived from the fraudulent dealer. Both are innocent. The question, therefore, is as to which of two equally innocent persons must bear the loss inflicted by the fraudulent acts of a third person.

As between the plaintiff and the fraudulent dealer there was an intention that the title should pass to the plaintiff concurrently with the transfer of the 1937 Hudson and the payment of the difference in cash to the dealer. Restatement, Law of Contracts, Section 267. It is conceded that the title of the 1937 Hudson was transferred and it is also conceded that no cash was paid, but it is contended that the subsequent delivery of the plaintiff's check was payment because the dealer agreed to accept it as payment, notwithstanding the plaintiff later directed the drawee bank to dishonor the check. In reading the record on the subject of the check, all we find is that when the time came for the plaintiff to pay the balance he asked the dealer "whether he would accept my check in payment for the car" and the dealer "said yes."

Now the presumption is against the conclusion that a debtor's check is accepted in payment, so as to extinguish the original obligation. **31 O. Jur. 184.** I am of the opinion that much stronger language than that used in this instance is necessary to overcome that presumption, and cast upon the receiver of a check the risk of the failure of the bank upon which it is drawn, which would be the effect if the check was accepted as payment. However that may be, certainly such language would not impose upon the receiver of the check the risk of loss resulting from the drawer's direction to the drawee bank not to honor it. That would impart to the dealer an intent to substitute an illusory thing for a thing of substance. To make a check payment the order upon the bank must be continuing, and there is implied in such a contract, as in every other contract that the contracting party will not interfere with the other in reaping the fruits of his contract. Expressed in other words, he can not derogate from his own grant. If this check was accepted as payment, what was thus accepted in lieu of cash was the continuing order of the plaintiff to the bank to pay and when the plaintiff withdrew that order there was a complete failure of consideration through the plaintiff's act, which would give the dealer the right to rescind the agreement to accept the

check as and in lieu of cash. Under such circumstances the rights of the dealer were restored under the original contract providing for cash, and the possession of the automobile having been restored to the dealer, he had a right to hold it and to refuse to transfer title until payment of the balance was made in cash. Having this right, he could certainly transfer such right even to one with knowledge of the facts and more certainly to an innocent purchaser for value. Such a transferee would be in rightful possession of the automobile.

(2) I am also of the opinion that the mortgagee is protected by the terms of §8405 GC, against any claim by the plaintiff. That section provides:

"When a person having sold goods continues in possession of the goods, or of negotiable documents of title to the goods, the delivery or transfer by that person, or by an agent acting for him of the goods or documents of title under any sale, pledge or other disposition thereof, to any person receiving and paying value therefor in good faith and without notice of the previous sale, shall have the same effect as if the person making the delivery or transfer were expressly authorized by the owner of the goods to make it."

Now the seller was in possession of the automobile by and with the consent of the plaintiff. The seller had all the indicia of ownership. The fact that the seller did not file the bill of sale with the clerk of courts so as to give notice is chargeable against the plaintiff whose agent he was for that purpose. The plaintiff put it in the dealer's power to perpetrate this fraud by relying upon him to file the bill of sale. The statute is no more than the application to a specified situation of the principle that where one of two innocent persons must suffer the one that puts it in the power of the wrongdoer to work the fraud must bear the loss.

(3) It is urged that the chattel mortgage is defective in form in certain respects, but as the mortgagee acquired lawful possession before any rights attached, after the mortgage was executed and while the automobile remained in the possession of the mortgagor, I do not deem the defects in the written mortgage of any consequence. 7 O. Jur., 543; Francisco v Ryan, 54 Oh St 307.

(4) The defendant claimed that there had been an express recission or repudiation of the sale by the plaintiff and offered to prove by certain witnesses statements made by the plaintiff at the time he returned the automobile tending to prove his intention in that respect. The court excluded this evidence, which I think was error. It was competent as an admission by the plaintiff. However, as in my opinion, final judgment should be rendered for the defendants for the other reasons set forth, it is not necessary to discuss this question, which would only be important in the event of a reversal and a remand for a new trial.

(5) In the majority opinion it is said that the retention of the check by the payee and its delivery to his attorney in some way limited his rights. No authority is cited for that statement. The drawer of the check had already withdrawn the order on the bank by directing it not to pay and all that was left in the payee's possession was a piece of paper evidencing the fact that the drawer had at one time given such an order. It was of no value except as evidence.

(6) The majority opinion seems to say that the fact that the dealer mortgaged the 1937 Hudson and could not return it, that in some way affects the defendant's right. If it had been necessary for the dealer to rescind to reinvest himself with the title to the 1938 Hudson, there would be some validity to that contention, but such is not the fact in this case. The title to the 1938 Hudson never vested in the plaintiff. He agreed that the title should remain in the dealer until it was paid for. He, thereby, allowed the actual title and all the indicia of ownership to remain in the dealer, and the dealer was, thereby, empowered to perpetrate a fraud upon the defendant,

which certainly was as innocent and as careful as he was.

For these reasons, I am of the opinion that the judgment should be reversed and final judgment rendered for the defendants.